# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALCLIFF MORGAN DALEY,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>PELAYO, et al.,<br><br>　　　　　Defendants. | 1:20-cv-01129-JLT-GSA-PC<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS IN PART; DISMISSING FIRST AMENDED COMPLAINT; GRANTING MOTION FOR LEAVE TO AMEND IN PART; AND DIRECTING CLERK OF COURT TO FILE LODGED SECOND AMENDED PRISONER RIGHTS COMPLAINT<br><br>(Docs. 13, 16, 17, 18.) |

　　　Alcliff Morgan Daley is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.

　　　The assigned magistrate judge issued findings and recommendations, recommending that the first amended complaint (FAC) be dismissed, without leave to amend, based on Plaintiff's failure to state a claim upon which relief may be granted under § 1983. (Doc. 16.) The plaintiff then filed a motion for leave to amend (Doc. 18)[1] and lodged a proposed second amended complaint. (Doc. 17.) On April 20, 2023, Plaintiff filed objections to the findings and recommendations, to which he attached the proposed second amended complaint.

　　　According to 28 U.S.C. § 636 (b)(1)(B) and Local Rule 304, this Court has conducted a *de*

---

[1] The assigned magistrate judge initially denied this motion for leave to amend (Doc. 20) but later withdrew that order. (Doc. 21.)

1

1 *novo* review of this case. Having carefully reviewed the entire file, including Plaintiff's objections, the
2 Court finds the findings and recommendations to be supported by the record and proper analysis in
3 part. The Court further finds that leave to amend is appropriate as to certain of the claims set forth in
4 the proposed second amended complaint.

5     The Court agrees with the findings and recommendations that the FAC fails to state any claims
6 upon which relief may be granted. The FAC attempts to advance an Eighth Amendment failure to
7 protect claim based upon the facts that: (1) Plaintiff had been issued a chrono for a lower bunk; (2)
8 despite this, he was nonetheless assigned to use an upper bunk; and (3) on August 24, 2019 he fell
9 while climbing down from the upper bunk and injured himself. (*See* Doc. 16 at 6.) The findings and
10 recommendations correctly conclude that, as pleaded in the FAC, this claim is insufficient because,
11 among other things, it fails to allege that any named defendant had knowledge of the medical condition
12 for which the lower bunk chrono was issued and therefore failed to allege that any defendant was
13 aware of facts from which an inference could be drawn that a substantial risk of serious harm existed.
14 (*See id*. at 4–8.) The findings and recommendations also correctly conclude that the FAC's retaliation
15 and medical deliberate indifference claims were insufficiently pleaded. (*See id*. at 8–10.)

16     Plaintiff does not appear to object to these conclusions. However, he does seek leave to amend.
17 (Docs. 17–19.) He explains that he has now undertaken extensive additional research in the prison law
18 library about the relevant legal standards and asserts that the proposed second amended complaint
19 sufficiently states a claim under the Eighth Amendment for deliberate indifference to a serious medical
20 need. (*See* Doc. 19.) Under Rule 15(a) of the Federal Rules of Civil Procedure, the Court should freely
21 give leave to amend when justice so requires unless amendment would be futile. *Hartmann v. CDCR*,
22 707 F.3d 1114, 1130 (9th Cir. 2013). Having carefully examined the proposed second amended
23 complaint, the Court concludes that granting leave to amend is appropriate, but only as to the
24 deliberate indifference claim against defendants Marin and Ochoa.

25     The proposed second amended complaint contains two claims. The first advances an Eighth
26 Amendment deliberate indifference/failure to protect claim against Correctional Officers Pelayo,
27 Marin, and Ochoa. (PSAC, ¶¶ 35–46.) The findings and recommendations provide the relevant
28 pleading standards for such a claim. (*See* Doc. 16 at 4–6.) At all relevant times, Plaintiff alleges that

prison officials issued him a valid chrono for a lower bunk because he fractured his wrist in August of 2018. (*Id*., ¶¶ 2, 4.) Plaintiff alleges that while he was housed in his initial housing unit, Defendant Pelayo informed him he would be moving housing units and would be assigned to an upper bunk. (*Id*., ¶¶ 6, 9.) Plaintiff informed Pelayo that he had a lower bunk chrono, Pelayo confirmed the existence of the chrono in the prison computer system, but Pelayo moved Plaintiff to the new unit anyway. (*Id*., ¶¶ 9–13.) Once there, Plaintiff was received by Defendants Marin and Ochoa. (*Id*., ¶ 14.) Plaintiff was again informed he would be moved to an upper bunk. (*Id*., ¶ 17.) Plaintiff informed Marin and Ochoa that he had a lower bunk chrono, which Ochoa then confirmed in the prison computer system. (*See id*., ¶¶ 17–19.) Plaintiff then specifically informed both Marin and Ochoa that he "could not grip anything and it was extremely painful for him to go onto or get down from the upper bunk." (*Id*., ¶ 14.) Ochoa apparently responded by acknowledging that he did see the lower bunk chrono in Plaintiffs records but indicated "they needed bed space" and would move Plaintiff to a lower bunk as soon as one became available. (*Id*., ¶ 24.)

Plaintiff's upper bunk assignment appears to have persisted for some time, as Plaintiff alleges that he "began to experience increased pains in his wrist from going onto and getting down off the upper bunk." (*Id*., ¶ 26.) In addition, "[o]n a daily basis Plaintiff complained to defendants about being housed on the upper bunk and requested that he be moved to a cell where he could have a lower bunk." (*Id*., ¶ 27.) He made such a request on "at least 20 occasions but defendants continued to ignore his request." (*Id*., ¶ 28.)

On April 24, 2019, Plaintiff had a visit with his primary care physician and told his doctor about being assigned to the upper bunk. (*Id*., ¶ 29–30.) Plaintiff's doctor "updated and addressed the [lower bunk chrono] making it permanent. (*Id*., ¶ 31.) That very same day, 30 minutes after returning to his housing unit, Defendant Marin told Plaintiff to pack his property because he was moving to a lower bunk in a different building. (*Id*., ¶ 32.) As Plaintiff was getting down off his bunk, and while Marin was standing at Plaintiff's door, Plaintiff fell off the bunk onto his back, hitting his head and losing consciousness. (*Id*., ¶ 33.) Plaintiff alleges that he suffered a neck and lumbar back sprain as a result. (*Id*., ¶ 34.)

These additional facts sufficiently allege that Marin and Ochoa, but not Pelayo, had knowledge

3

of the essential <u>reason</u> for Plaintiff's upper bunk chrono: that Plaintiff had difficulty gripping things. At this stage of the case, this, plus the allegation that Marin and Ochoa knew of Plaintiff's lower bunk chrono, is sufficient to give rise to the inference that assigning Plaintiff to an upper bunk, which logically would require him to grip parts of the bunk to climb to the top, could place Plaintiff at risk of falling to the ground, which could in turn put him at serious risk of harm. *See McGee v. Beers*, No. No. C-100140 WHA (PR), 2010 WL 399105, at *1 (N.D. Cal. Jan. 28, 2010) (finding cognizable deliberate indifference claim where defendant was alleged to have knowledge that plaintiff required a lower bunk because he had a seizure disorder but nonetheless placed plaintiff in an upper bunk).[2] Therefore, leave to amend is **GRANTED** as to the proposed Eighth Amendment failure to protect claim against Marin and Ochoa, but not against Pelayo.

The proposed second amended complaint contains a second claim, which alleges that Pelayo, Marin, and Ochoa violated the Americans with Disabilities Act. (PSAC, ¶¶ 47–63.) However, the ADA does not provide a basis to sue government officials in their individual capacities. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA. . ."). Because of this, the Court finds that Plaintiff will be unable to advance an ADA claim in this case and therefore allowing him to do so would be futile. Leave to amend is **DENIED** as to this claim.  Accordingly, the Court **ORDERS**:

    1. The findings and recommendations issued on March 29, 2023, (Doc. 16). are **ADOPTED IN PART.**

    2. The first amended complaint (Doc. 13) is **DISMISSED WITH LEAVE TO AMEND**.

    3. Plaintiff's motion to amend (Doc. 18) is **GRANTED IN PART**.

        a. The Clerk of Court is directed to file the lodged second amended complaint (Doc. 17).

        b. That Complaint may proceed only as to the Eighth Amendment failure to protect claim against Marin and Ochoa.

---

[2] The Court recognizes that Defendants arguably were in the process of addressing the upper bunk assignment at the time Plaintiff was injured. How that factors into the relevant analysis remains unclear at this stage of the case.

4. The matter is referred to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   **June 26, 2023**

UNITED STATES DISTRICT JUDGE